**ALKIRE TRUCK LINES, Inc., Francis Draffen, Samuel Cary, and Hawkeye Security Insurance Company, Appellants,**

v.

**COMMERCIAL STANDARD INSURANCE COMPANY, a Corporation, Appellee.**

**No. 15498.**

United States Court of Appeals Eighth Circuit.

July 31, 1956.

Paul C. Sprinkle, Kansas City, Mo. (Sprinkle, Knowles & Carter, Kansas City, Mo., on the brief), for appellants.

Sam Mandell, Kansas City, Mo. (S. David Trusty and Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

This action grew out of an accident where one Samuel Cary drove a truck-tractor belonging to Francis Draffen and leased to Alkire Truck Lines, Inc. (the three named parties being plaintiffs in this action) into collision in Kansas City, Missouri, causing personal injuries

that resulted in the recovery of $33,250.-00 damages against said plaintiffs which was paid by the remaining plaintiff Hawkeye Security Insurance Company, their insurance carrier. At the time of the collision, Cary, an employee of Alkire, was on his way to the Chevrolet dock in Leeds, Missouri, to pick up a certain empty trailer belonging to Alkire in order to take it to Alkire's dock to bed it and haul a load of cattle in it for Alkire. Alkire's foreman was the authorized person who directed Cary, then working under him, to make the trip and render the service "because he (the foreman) would need [the trailer] to load it shortly in the afternoon." Toedebusch Transfer, Inc. had just completed making use of the trailer under a lease for the transportation of merchandise from St. Louis, Missouri, to the dock of the Chevrolet plant in Leeds, Missouri, and, as required by custom, would have moved it to its own dock for surrender to the owner, but at the time the unloading was finished, it did not have a tractor available. Its intention was to move the trailer to the Toedebusch dock promptly, but instead, Alkire sent Cary with the Draffen tractor, which it had under lease, to Leeds to pick up its own trailer and return it to its own dock in Kansas City because it wanted to use it immediately in its own business and did not choose to wait for Toedebusch to take it to its dock to be picked up later.

This action was brought against the insurance carrier of Toedebusch Transfer, Inc. to compel it to pay for the loss resulting from the collision on the alleged grounds that (1) the Draffen tractor was legally engaged at the time of the accident upon the business of Toedebusch Transfer, Inc. and (2) in going after the trailer, the tractor was being used under the franchise issued by the State of Missouri to Toedebusch.

After trial of the case to the court without jury, the court made complete findings of fact and conclusions of law in favor of defendant and dismissed the case at plaintiffs' costs. The plaintiffs appeal. They admit the completeness and accuracy of the court's findings of the evidentiary facts and state that the sole issue on appeal is whether or not the tractor, when going after the trailer, was performing any act for Toedebusch Transfer, Inc. If not, no liability for the damages attached to Toedebusch or to its insurance carrier.

The conclusion of the trial court was that it was not, and we think the record allows of no other conclusion.

Toedebusch fully completed its transportation of merchandise from St. Louis to Leeds in Alkire's trailer. It intended, pursuant to a custom, to take the trailer to its dock in Kansas City. If it had refused or unreasonably delayed to do that, it might have become liable for the cost of having it done. But, as the trial court determined in accord with the evidence, Toedebusch did not delay unreasonably. It was prevented from having any part in the movement of the trailer. Alkire sent its own employee, Cary, to Leeds to pick up and move its trailer, not to Toedebusch's dock, but to its own dock, and Cary was obeying that order given to him by Alkire, and was not on any mission for or acting as agent for Toedebusch when the accident occurred. Toedebusch was not responsible for Cary's tort. Toedebusch's insurance carrier was in no wise liable in respect to the accident.

We have considered the arguments and examined the cases cited for appellants, but are convinced that none supports their contention that Cary was on any business for Toedebusch or acting under Toedebusch's franchise when the accident happened. Appellants rely heavily on the case of Zimmerman v. Mathews Trucking Corp. considered by this Court in 203 F.2d 864, and 205 F.2d 837. But nothing said in any of the opinions in that litigation tends to support appellants here. It is true a claim in that case was that the driver of a truck-tractor, like the one here involved, negligently drove it into collision and caused damages while he was on his way to pick up a trailer to haul a load of oleo for the Mathews Trucking Corp. and was moving the tractor and intending to move the trailer and tractor under Mathews' public franchise.

██ But in this case, although the plaintiffs alleged, as the basis of their cause of action, that Cary was driving the tractor "pursuant to the direction and authority and request of Toedebusch Transfer, Inc.", the trial court found, in accord with the evidence, that "Toedebusch did not engage, employ or appoint Alkire, Cary or Draffen * * * to transport * * * [the Keystone trailer] * * * to Alkire's freight dock." There was no evidence from which it could be inferred here that Alkire was without franchise or authority to transact its business of transporting cattle over the highways with its automotive vehicles, and the finding of the court that in this case Alkire sent its employee after its trailer to haul a load of cattle to St. Louis in it is in accord with the evidence. Getting the trailer and taking it to Alkire's dock was Alkire's business and not the business of anyone else, and there was no evidence to justify imposing the loss incurred in its negligent operation upon Toedebusch or its insurance carrier.

Affirmed.